MIN
MERS Telephone: (888) 679-6377

**ORIGINAL**

# Note

| April 9, 2015 | Mount Laurel | NJ |
|---|---|---|
| *[Date]* | *[City]* | *[State]* |

FHA Case No

4600 Alcott Way, 401
Owings Mills, MD 21117
*[Property Address]*

### 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $180,347.00    (this amount is called "Principal"), plus interest to the order of the Lender. The Lender is Freedom Mortgage Corporation

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

### 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of    3.750%.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

### 3. PAYMENTS

#### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on June 1, 2015    . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest and other items in the order described in the Security Instrument before Principal. If, on May 1, 2040    , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at Attn: Payment Processing, PO Box 9001719, Louisville, KY 40290-1719    or at a different place if required by the Note Holder.

#### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $    927.23    .

### 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to any accrued and unpaid interest on the Prepayment amount before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/15
VMP1R (1411).00
Page 1 of 4

5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

6.   BORROWER'S FAILURE TO PAY AS REQUIRED

(A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of        15        calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be        4.000% of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

7.   GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP90
Wolters Kluwer Financial Services

1/15
VMP1R (1411).00
Page 2 of 4

9.  WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

10.  UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

### Grounds for Acceleration of Debt.

**(a) Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)  Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

    (ii)  Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

**(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

    (i)  All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

    (ii)  The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

**(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

**(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

**(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/15
VMP1R (1411) 00
Page 3 of 4

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)                    _____ (Seal)
Katrina Hill                    -Borrower                                          -Borrower


_____ (Seal)                    _____ (Seal)
                                -Borrower                                          -Borrower

[Sign Original Only]

☐ Refer to the attached *Signature Addendum* for additional parties and signatures.

Loan origination organization Freedom Mortgage Corporation
NMLS ID ████
Loan originator Daniel Bryan Curtis
NMLS ID ████

FHA Multistate Fixed Rate Note
Bankers Systems™ VMP®
Wolters Kluwer Financial Services

1/15
VMP1R (1411).00
Page 4 of 4

Pay to the order of

Homeward Residential, Inc.

without recourse this ___6___ day of May 20 15

Freedom Mortgage Corporation

Stanley C. Middleman
President/Chief Executive Officer

Pay to the Order of

VOID

Without Recourse
By: Homeward Residential, Inc.

Patty Taylor, Vice President

# ALLONGE

LOAN NUMBER:

BORROWER (S):        Katrina Hill

PROPERTY ADDRESS:    4600 Alcott Way 401
                     Owings Mills, MD 21117

NOTE/LOAN AMOUNT:    $180,347.00

NOTE/LOAN DATE:      4/9/2015

*PAY TO THE ORDER OF:*
OCWEN LOAN SERVICING, LLC

WITHOUT RECOURSE
HOMEWARD RESIDENTIAL, INC.

John Dugan
Authorized Signer

# ALLONGE

LOAN NUMBER:

BORROWER (S):          Katrina Hill

PROPERTY ADDRESS:      4600 Alcott Way 401
                       Owings Mills, MD 21117

NOTE/LOAN AMOUNT:      $180,347.00

NOTE/LOAN DATE:        4/9/2015

PAY TO THE ORDER OF:

WITHOUT RECOURSE
OCWEN LOAN SERVICING, LLC

John Dugan
Authorized Signer

0036145 390

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0390, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

Record and Return To:
Surety Lender Services LLC
5000 Atrium Way Suite 5
Mount Laurel NJ 08054

Return To:
Freedom Mortgage Corporation
Attn: Final Documents
P.O. Box 8001
Fishers, IN 46038-8001

Prepared By:
Stan Moskowitz, Chief Financial Officer
Freedom Mortgage Corporation

---

# Deed of Trust

**State of Maryland**

Refinance

| FHA Case No. |
| --- |

MIN

This is a refinance of a Deed of Trust/Mortgage/Other Security Instrument recorded among the land records of _Baltimore_ County/City, Maryland in Liber No _____ Folio _____, in the original principal amount of $ _____, and with the unpaid outstanding principal balance of $ _____. The interest rate provided for in the evidence of indebtedness secured by this refinance mortgage is lower than the applicable interest rate provided for in the evidence of indebtedness secured by the Deed of Trust/Mortgage/Other Security Instrument being refinanced .

THIS DEED OF TRUST ("Security Instrument") is made on April 9, 2015
The Grantor is  Katrina  Hill, a sole owner.

("Borrower"). The trustee is Thomas P. Dore

("Trustee"). The beneficiary is Mortgage Electronic Registration Systems, Inc. ("MERS"), (solely as nominee for Lender, as herinafter defined, and Lender's successors and assigns). MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. Freedom Mortgage Corporation

("Lender") is organized and existing under the laws of The State of New Jersey , and has an address of 907 Pleasant Valley Av Ste 3, Mount Laurel, NJ  08054
. Borrower owes Lender the principal sum of
One Hundred Eighty Thousand Three Hundred Forty Seven and 00/100
Dollars (U.S. $180,347.00 ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on
May 1, 2040 . This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under paragraph 7 to protect the security of this

FHA Deed of Trust with MERS- MD
Bankers Systems VMP
Wolters Kluwer Financial Services

FHA 4/96 Amended 2/98
VMP-4N(MD)
Page 1 of 8

0036145 391

Security Instrument; and (c) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to the Trustee, in trust, with power of sale, the following described property located in Baltimore

County, Maryland:

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

Parcel ID Number:

which has the address of 4600 Alcott Way, 401         [Street]
Owings Mills       [City], Maryland
21117    [Zip Code] ("Property Address");

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS, (as nominee for Lender and Lender's successors and assigns), has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing or canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

Borrower and Lender covenant and agree as follows:

UNIFORM COVENANTS.

**1. Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

**2. Monthly Payment of Taxes, Insurance and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. Section 2601 *et seq.* and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

VMP-4N(MD) (0602)        Page 2 of 8        Initials: KAH

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0391, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 392

If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

**3. Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

First, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

Second, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

Third, to interest due under the Note;

Fourth, to amortization of the principal of the Note; and

Fifth, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.





Initials: KAH

VMP-4N(MD) (0502)                         Page 3 of 8

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0392, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 393

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement, at the Note rate, and at the option of Lender, shall be immediately due and payable.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**8. Fees.** Lender may collect fees and charges authorized by the Secretary.

**9. Grounds for Acceleration of Debt.**

(a) **Default.** Lender may, except as limited by regulations issued by the Secretary, in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

(i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

(ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

(b) **Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including Section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

(i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

(ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property but his or her credit has not been approved in accordance with the requirements of the Secretary.

(c) **No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

(d) **Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.



Initials: _KAH_

VMP-4N(MD) (0602)                    Page 4 of 8

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0393, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 394

(e) **Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within 60 days from the date hereof, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to 60 days from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

**10. Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

**11. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successor in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by Federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.





Initials: _KAH_

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0394, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 395

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**18. Foreclosure Procedure. If Lender requires immediate payment in full under paragraph 9, Lender may invoke the power of sale and any other remedies permitted by applicable law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to reasonable attorneys' fees and costs of title evidence.**

If Lender invokes the power of sale, Lender shall mail or cause Trustee to mail a notice of sale to Borrower in the manner prescribed by applicable law. Trustee shall give notice of sale by public advertisement for the time and in the manner prescribed by applicable law. Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, Trustee's fees of 5.000 % of the gross sale price and reasonable attorney's fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

Borrower, in accordance with Subtitle W of the Maryland Rules of Procedure, does hereby declare and assent to the passage of a decree to sell the Property in one or more parcels by the equity court having jurisdiction for the sale of the Property, and consents to the granting to any trustee appointed by the assent to decree of all the rights, powers and remedies granted to the Trustee in this Security Instrument together with any and all rights, powers and remedies granted by the decree. Neither the assent to decree nor the power of sale granted in this paragraph 18 shall be exhausted in the event the proceeding is dismissed before the payment in full of all sums secured by this Security Instrument.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under Paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 *et seq.*) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this Paragraph 18 or applicable law.

VMP®-4N(MD) (0602)                     Page 6 of 8                              Initials: _KAH_

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0395, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 396

**19. Release**. Upon payment of all sums secured by this Security Instrument, Lender or Trustee shall release this Security Instrument without charge to Borrower and mark the Note "paid" and return the Note to Borrower. Borrower shall pay any recordation costs.

**20. Substitute Trustee**. Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder by an instrument recorded in the city or county in which this Security Instrument is recorded. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by applicable law.

**21. Possession of the Property**. Borrower shall have possession of the Property until Lender has given Borrower notice of default pursuant to paragraph 18 of this Security Instrument.

**22. Riders to this Security Instrument**. If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

[ xx] Condominium Rider                [ ] Growing Equity Rider            [ ] Other [specify]
[   ] Planned Unit Development Rider   [ ] Graduated Payment Rider

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Witnesses:

_Florine J. Robinson_                              _Katrina Hill_ _____ (Seal)
                                                                              -Borrower

_____      _____ (Seal)
                                                                              -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                                 -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                                 -Borrower

_____ (Seal)    _____ (Seal)
                    -Borrower                                                 -Borrower

VMP-4N(MD) (0602)                       Page 7 of 8

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0396, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 397

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0397, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

**STATE OF MARYLAND,**                    *Baltimore*                    **County ss:**
I Hereby Certify, That on this   9   day of  *April*      *2015*, before me, the
Subscriber, a Notary Public of the State of Maryland, in and for the  *County of Baltimore City*
personally appeared
*Katrina Hill*

known to me or satisfactorily proven to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged that he/she/they executed the same for the purposes therein contained.
    AS WITNESS: my hand and notarial seal.

My Commission Expires: *7-29-2018*                    *Florine J. Robinson*
                                    Notary Public        Florine J. Robinson
    **Florine J. Robinson**                        MD Title Insurance Producer
    **NOTARY PUBLIC**                        RPI 99908973 Exp: *2/28/2017*
    **Baltimore City, Maryland**                    Gwynn Oak, MD 21207
    **My Commission Expires 7/29/2018**                Telephone: 410-448-5954

**STATE OF** *NJ*                        *Burlington* **County ss:**
    I Hereby Certify, That on this   *9th*    day of   *April*            , before
me, the subscriber, a Notary Public of the State of  *NJ*        *2015*
and for the *county of Burlington*,       *Ernestine Nunez*     personally appeared
the agent of the party secured by the foregoing Deed of Trust, and made oath in due form of law that the
consideration recited in said Deed of Trust is true and bona fide as therein set forth and that the actual sum of
money advanced at the closing transaction by the secured party was paid over and disbursed by the party or
parties secured by the Deed of Trust to the Borrower or to the person responsible for disbursement of funds in
the closing transaction or their respective agent at a time not later than the execution and delivery by the
Borrower of this Deed of Trust; and also made oath that he is the agent of the party or parties secured and is duly
authorized to make this affidavit.
    AS WITNESS: my hand and notarial seal.

My Commission Expires:
                                    Notary Public

    **JOSEPHINE SCIARRINO**
    **NOTARY PUBLIC OF NEW JERSEY**
    **My Commission Expires March 17, 2016**

This certifies that the within instrument was prepared by Freedom Mortgage Corporation.

                            _____
                            Stan Moskowitz, Chief Financial Officer

Loan origination organization    Freedom Mortgage Corporation
NMLS ID
Loan originator   Daniel Bryan Curtis
NMLS ID

VMP-4N(MD)                        Page 8 of 8                Initials: *KH*

00361.45  398

Licensee Information

Maryland Mortgage Lender Name:
No mortgage broker was involved in the mortgage.
Maryland Mortgage Lender License Number:      N/A
Maryland Mortgage Originator Name:            Daniel Bryan Curtis
Maryland Mortgage Originator License Number:  ████

0036145 399

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0399, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

# CONDOMINIUM RIDER

| FHA Case No. |
|---|

**THIS CONDOMINIUM RIDER** is made this 9th       day of April, 2015                      ,
and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed ("Security Instrument") of the same date given by the undersigned ("Borrower") to secure Borrower's Note ("Note") to
Freedom Mortgage Corporation

("Lender") of the same date and covering the Property described in the Security Instrument and located at:

4600 Alcott Way, 401
Owings Mills, MD 21117
[Property Address]

The Property includes a unit in, together with an undivided interest in the common elements of, a condominium project known as:

BECKETT GREEN CONDOMINIUM
[Name of Condominium Project]

("Condominium Project"). If the owners association or other entity which acts for the Condominium Project ("Owners Association") holds title to property for the benefit or use of its members or shareholders, the Property also includes  Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**CONDOMINIUM COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

A.   So long as the Owners Association maintains, with a generally accepted insurance carrier, a "master" or "blanket" policy insuring all property subject to the condominium documents, including all improvements now existing or hereafter erected on the Property, and such policy is satisfactory to Lender and provides insurance coverage in the amounts, for the periods, and against the hazards Lender requires, including fire and other hazards included within the term "extended

FHA Multistate Condominium Rider - 10/95
Wolters Kluwer Financial Services
VMP®-586U (0402).01
Page 1 of 3          Initials: KAH

D036145 400

coverage," and loss by flood, to the extent required by the Secretary, then: (i) Lender waives the provision in Paragraph 2 of this Security Instrument for the monthly payment to Lender of one-twelfth of the yearly premium installments for hazard insurance on the Property, and (ii) Borrower's obligation under Paragraph 4 of this Security Instrument to maintain hazard insurance coverage on the Property is deemed satisfied to the extent that the required coverage is provided by the Owners Association policy. Borrower shall give Lender prompt notice of any lapse in required hazard insurance coverage and of any loss occurring from a hazard. In the event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Property, whether to the condominium unit or to the common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Security Instrument, with any excess paid to the entity legally entitled thereto.

B.  Borrower promises to pay all dues and assessments imposed pursuant to the legal instruments creating and governing the Condominium Project.

C.  If Borrower does not pay condominium dues and assessments when due, then Lender may pay them. Any amounts disbursed by Lender under this Paragraph C shall become additional debt of Borrower secured by the Security Instrument. Unless Borrower and Lender agree to other terms of payment, these amounts shall bear interest from the date of disbursement at the Note rate and shall be payable, with interest, upon notice from Lender to Borrower requesting payment.

VMP®-586U (0402).01                    Page 2 of 3

—KAH—

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0400, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0401, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Condominium Rider.

_____ (Seal)    _____ (Seal)
Katrina Hill    -Borrower                               -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                     -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                     -Borrower

_____ (Seal)    _____ (Seal)
-Borrower                                     -Borrower

VMP®-586U (0402).01         Page 3 of 3

0036145 402

## MARYLAND REFINANCE AFFIDAVIT
## REFINANCE CERTIFICATE

Pursuant to Section 12-108(g), Tax Property Article, Annotated Code of Maryland, the undersigned hereby certify under oath, that he/she/they is/are the original Mortgagor(s), that the secured property indicated below is his/her/their principal residence, and that the following loans are being refinanced:

| ORIGINAL AMOUNT | LIBER | FOLIO | UNPAID PRINCIPAL BALANCE |
|---|---|---|---|
| $ 191,442.00 | 29106 | 447 | $ 175,708.62 |
| $ | | | $ |

**TOTAL** $ 175,708.62

**SECURED PROPERTY**:  4600 Alcott Way #401

Owings Mills, MD 21117

Grantor/Owner

Grantor/Owner

**STATE OF MARYLAND**          COUNTY: *Baltimore*

I hereby certify, that on this *9* day of *April*, 20*15*, appeared before me, the subscriber, a Notary Public of the State of Maryland, in and for the *Baltimore* County, personally appeared *Katrina Hill*

known to me or satisfactorily proven to be the person whose name is subscribed to the within instrument and acknowledges that he/she/ they executed that same for the purposed therein contained.

**AS WITNESS:**  My hand and notarial seal.

My commissions expires: *7-29-2018*                     Notary Public

Florine J. Robinson
NOTARY PUBLIC
Baltimore City, Maryland
My Commission Expires 7/29/2018

Florine J. Robinson
MD Title Insurance Producer
RPI 99908973 Exp: *2/28/2017*
Gwynn Oak, MD 21207
Telephone: 410-448-5954

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0402, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 403

## EXHIBIT "A"

### LEGAL DESCRIPTION

File No ▮▮▮▮▮

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE COUNTY OF BALTIMORE, STATE OF Maryland, AND IS DESCRIBED AS FOLLOWS:

BEING KNOWN AND DESIGNATED AS UNIT NO. 401 IN BECKETT GREEN CONDOMINIUM AS ESTABLISHED PURSUANT TO A DECLARATION FOR BECKETT GREEN CONDOMINIUM DATED JUNE 25, 1997 AND RECORDED AMONG THE LAND RECORDS OF BALTIMORE COUNTY IN LIBER SM NO. 12250, FOLIO 597 ( AND AS THE SAME MAY BE LAWFULLY AMENDED FROM TIME TO TIME), AND PURSUANT TO THE CONDOMINIUM PLAT ENTITLED "BECKETT GREEN, PHASE SIX" DATED OCTOBER 5, 1999 AND RECORDED AT PLAT BOOK SM NO. 23, FOLIO 36 (AND THE SAME MAY BE LAWFULLY AMENDED FROM TIME TO TIME), AND SUBJECT TO THE BY-LAWS FOR SAID CONDOMINIUM RECORDED AT LIBER SM NO. 12550, FOLIO 617 (AND THE SAME MAY BE LAWFULLY AMENDED FROM TIME TO TIME). TOGETHER WITH THAT UNDIVIDED INTEREST IN THE COMMON ELEMENTS OF THE SAID BECKETT GREEN CONDOMINIUM APPURTENANT TO SAID UNIT.

Parcel ID: ▮▮▮▮▮▮

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0403, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

0036145 404

## State of Maryland Land Instrument Intake Sheet

☐ Baltimore City    ☑ County: Baltimore

Information provided is for the use of the Clerk's Office, State Department of Assessment and Taxation, and County Finance Office Only.
(Type or Print in Black Ink Only—All Copies Must Be Legible)

| 1 Type(s) of Instruments | ( ☐ Check Box if addendum Intake Form is Attached.) | | | |
|---|---|---|---|---|
| | ☐ Deed | ☐ Mortgage | ☐ Other _____ | ☐ Other _____ |
| | ☒ Deed of Trust | ☐ Lease | | |

| 2 Conveyance Type Check Box | ☐ Improved Sale Arms-Length [1] | ☐ Unimproved Sale Arms-Length [2] | ☐ Multiple Accounts Arms-Length [3] | ☐ Not an Arms-Length Sale [9] |
|---|---|---|---|---|

| 3 Tax Exemptions (if applicable) Cite or Explain Authority | Recordation | |
|---|---|---|
| | State Transfer | |
| | County Transfer | |

Space Reserved for Circuit Court Clerk's Office Recording Validation

```
IMP FD SURE        40.00
RECORDING FEE      20.00
TOTAL              60.00
Rec# BAN4   Rcp1 # 53609
JLE   LL    BLK # 670
May 06, 2015    03:08 PM
```

### 4 Consideration and Tax Calculations

| Consideration Amount | | Finance Office Use Only — Transfer and Recordation Tax Consideration | |
|---|---|---|---|
| Purchase Price/Consideration | $ | Transfer Tax Consideration | $ |
| Any New Mortgage | $ 180,347.00 | X ( ) % | = $ |
| Balance of Existing Mortgage | $ 175,708.62 | Less Exemption Amount − | $ |
| Other: | $ | Total Transfer Tax | = $ |
| Other: | $ | Recordation Tax Consideration | $ |
| | | X ( ) per $500 | = $ |
| Full Cash Value: | $ | TOTAL DUE | $ 25.00 |

### 5 Fees

| Amount of Fees | Doc. 1 | Doc. 2 | |
|---|---|---|---|
| Recording Charge | $ 60.00 | $ | Agent: |
| Surcharge | $ | $ | |
| State Recordation Tax | $ | $ | Tax Bill: |
| State Transfer Tax | $ | $ | C.B. Credit: |
| County Transfer Tax | $ 25.00 | $ | |
| Other | $ | $ | Ag. Tax/Other: |
| Other | $ | $ | |

### 6 Description of Property

SDAT requires submission of all applicable information. A maximum of 40 characters will be indexed in accordance with the priority cited in Real Property Article Section 3-104(g)(3)(i).

| District | Property Tax ID No. (1) | Grantor Liber/Folio | Map | Parcel No. | Var. LOG |
|---|---|---|---|---|---|
| 02 | | 29108/447 | | | ☐ (5) |

| Subdivision Name | Lot (3a) | Block (3b) | Sect/AR (3c) | Plat Ref. | SqFt/Acreage (4) |
|---|---|---|---|---|---|
| Beckett Green | 401 | | | | |

| Location/Address of Property Being Conveyed (2) | |
|---|---|
| 4600 Alcott Way #401 Owings Mills, MD 21117 | |

| Other Property Identifiers (if applicable) | Water Meter Account No. |
|---|---|

Residential ☑ or Non-Residential ☐    Fee Simple ☑ or Ground Rent ☐ Amount: _____
Partial Conveyance? ☐ Yes ☑ No    Description/Amt. of SqFt/Acreage Transferred: _____

If Partial Conveyance, List Improvements Conveyed:

### 7 Transferred From

| Doc. 1 – Grantor(s) Name(s) | Doc. 2 – Grantor(s) Name(s) |
|---|---|
| Katrina Hill | |

| Doc. 1 – Owner(s) of Record, if Different from Grantor(s) | Doc. 2 – Owner(s) of Record, if Different from Grantor(s) |
|---|---|

### 8 Transferred To

| Doc. 1 – Grantee(s) Name(s) | Doc. 2 – Grantee(s) Name(s) |
|---|---|
| Freedom Mortgage Corporation | |

| New Owner's (Grantee) Mailing Address | |
|---|---|

### 9 Other Names to Be Indexed

| Doc. 1 – Additional Names to be Indexed (Optional) | Doc. 2 – Additional Names to be Indexed (Optional) |
|---|---|

### 10 Contact/Mail Information

| Instrument Submitted By or Contact Person | ☑ Return to Contact Person |
|---|---|
| Name: Tonya Doyle | |
| Firm: Surety Lender Services, LLC | ☐ Hold for Pickup |
| Address: 5000 Atrium Way Suite 5 | |
| Mt. Laurel, NJ 08054    Phone: (856) 702-6835 | ☑ Return Address Provided |

### 11 IMPORTANT: BOTH THE ORIGINAL DEED AND A PHOTOCOPY MUST ACCOMPANY EACH TRANSFER

| Assessment Information | ☑ Yes ☐ No | Will the property being conveyed be the grantee's principal residence? |
|---|---|---|
| | ☐ Yes ☑ No | Does transfer include personal property? If yes, identify: |
| | ☐ Yes ☑ No | Was property surveyed? If yes, attach copy of survey (if recorded, no copy required). |

### Assessment Use Only – Do Not Write Below This Line

| Terminal Verification | Agricultural Verification | Whole Part | Tran. Process Verification |
|---|---|---|---|
| Transfer Number | Date Received: | Deed Reference: | Assigned Property No.: |

| Year, | 20 | 20 | Geo. | Map | Sub | Block |
|---|---|---|---|---|---|---|
| Land | | | Zoning | Grid | Plat | Lot |
| Buildings | | | Use | Parcel | Section | Occ. Cd. |
| Totals | | | Town Cd. | Ex. St. | Ex. Cd. | |

REMARKS:

White – Clerk's Office    Canary – SDAT
Pink – Office of Finance    Goldenrod – Preparer    AOC-CC-300 (5/2007)

BALTIMORE COUNTY CIRCUIT COURT (Land Records) JLE 36145, p. 0404, MSA_CE62_36001. Date available 05/11/2015. Printed 04/05/2022.

Baltimore County Cir Crt
IMP FD SURE        $40.00
RECORDING FEE      $20.00

TOTAL              $60.00
JLE    5F
Nov 12, 2020      11:27 am

## ASSIGNMENT OF DEED OF TRUST

FOR GOOD AND VALUABLE CONSIDERATION, the sufficiency of which is hereby acknowledged, the undersigned, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, (ASSIGNOR), (MERS Address: P.O. Box 2026, Flint, Michigan 48501-2026)** by these presents does convey, grant, assign, transfer and set over the described Deed of Trust, all liens, and any rights due or to become due thereon to **PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION, WHOSE ADDRESS IS 5720 PREMIER PARK DRIVE, WEST PALM BEACH, FL 33407 (800)449-8767, ITS SUCCESSORS AND ASSIGNS, (ASSIGNEE).**

Said Deed of Trust is dated 04/09/2015, which was executed by **KATRINA HILL, A SOLE OWNER** and recorded among the land records of OWINGS MILLS (City), **BALTIMORE** (County), **Maryland**, in **Liber 36145 and Folio 390.**

Property is commonly known as: 4600 ALCOTT WAY, OWINGS MILLS, MD 21117.

Dated this **12th day of November in the year 2020**
**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS**

*Tracy Rogers*

TRACY ROGERS
VICE PRESIDENT

All persons whose signatures appear above have qualified authority to sign and have reviewed this document and supporting documentation prior to signing.

STATE OF FLORIDA   COUNTY OF PINELLAS
The foregoing instrument was acknowledged before me by means of [X] physical presence or [ ] online notarization on this 12th day of November in the year 2020, by Tracy Rogers as VICE PRESIDENT of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS BENEFICIARY, AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION, ITS SUCCESSORS AND ASSIGNS, who, as such VICE PRESIDENT being authorized to do so, executed the foregoing instrument for the purposes therein contained. He/she/they is (are) personally known to me.

*Karin Chandias*

KARIN CHANDIAS
COMM EXPIRES: 07/28/2023

KARIN CHANDIAS
Notary Public - State of Florida
Commission # GG 359792
My Comm. Expires Jul 28, 2023
Bonded through National Notary Assn.

**Document Prepared By: Dave LaRose/NTC, 2100 Alt. 19 North, Palm Harbor, FL 34683 (800)346-9152**
When Recorded Return To: PHH Mortgage, C/O Nationwide Title Clearing, Inc. 2100 Alt. 19 North, Palm Harbor, FL 34683

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (MERS)
OCWEN-NVLER MIN ▮▮▮▮▮▮▮▮▮▮▮▮▮  MERS PHONE 1-888-679-6377 MERS Mailing Address: P.O. Box 2026, Flint, MI 48501-2026

**BOOK: 47366 PAGE: 189**

```
Baltimore County Cir Crt
IMP FD SURE      $40.00
RECORDING FEE    $20.00

TOTAL            $60.00
JLE   CMG
Sep 21, 2022    09:38 am
```

PREPARED BY:
C. Riggsby
RETURN TO:
C. Riggsby
2860 Exchange Blvd. # 100
Southlake TX 76092                    **Assignment of Deed of Trust**          Send Any Notices To Assignee.

For Valuable Consideration, the undersigned, PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION  3000 Leadenhall Road, Mailstop PCLG, Mount Laurel NJ 08054 (Assignor) by these presents does assign and set over, without recourse, to WILMINGTON SAVINGS FUND SOCIETY, AS TRUSTEE OF WAMPUS MORTGAGE LOAN TRUST  1600 South Douglass Road, Suite 110, Anaheim CA 92806 (Assignee) the described deed of trust with all interest, all liens, any rights due or to become due thereon, executed by **Katrina Hill, as sole owner** to MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (MERS) AS NOMINEE FOR FREEDOM MORTGAGE CORPORATION ITS SUCCESSORS AND ASSIGNS.  Trustee: THOMAS P. DORE   Said deed of trust Dated: 4/9/2015 is recorded in the State of MD, County of Baltimore on 05/06/2015, Liber 36145 Page 390 AMOUNT: $ 180,347.00      Property Address: 4600 ALCOTT WAY 401, OWINGS MILLS, MD  21117
IN WITNESS WHEREOF, the undersigned entity has caused this instrument to be executed as a sealed instrument by its proper signatory.  Executed on:  September 20, 2022
PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION
By: Liepold Harrison & Associates, PLLC its Attorney in fact

By:   _H. Scott_____

    Heather Scott, Vice President


State of TX County of Tarrant
        On 09/20/2022, before me, the undersigned, Heather Scott, who acknowledged that he/she is Vice President of/ By: Liepold Harrison & Associates, PLLC its Attorney in fact for PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION  and that he/she executed the foregoing instrument and that such execution was done as the free act and deed of PHH MORTGAGE CORPORATION, A NEW JERSEY CORPORATION .

```
C. LAFFERTY
My Notary ID # 11593634
Expires November 30, 2022
```

    _C. Lafferty_

    Notary public, C. Lafferty
    My commission expires: November 30, 2022


                        MD  Baltimore

| Post Suspense Balance | -$95.15 |
|---|---|

| Transaction Type | Transaction Date | Amount Received | Post-petition Due Date | Post Amt Due Per PCN | Contractual Amt Applied | Principal | Escrow | Posting Over/Short | Credit to Post Suspense | Debit from Post Suspense | Post Suspense Balance |
|---|---|---|---|---|---|---|---|---|---|---|---|
| Beginning Balance | 7/25/2022 | $0.00 | 7/1/2022 | | | | | | $0.00 | $0.00 | $0.00 |
| Post-Petition | 08/02/22 | $2,175.32 | 8/1/2022 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $850.65 | $850.65 | $0.00 | $850.65 |
| Post-Petition | 09/01/22 | $474.04 | 9/1/2022 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$850.63 | $0.00 | $850.63 | $0.02 |
| Post-Petition | 10/11/22 | $1,324.68 | 10/1/2022 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $0.01 | $0.01 | $0.00 | $0.03 |
| Post-Petition | 10/24/22 | $662.34 | | | | | | | $662.34 | $0.00 | $662.37 |
| Post-Petition | 11/07/22 | $662.34 | 11/1/2022 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.04 |
| Post-Petition | 11/21/22 | $662.34 | | | | | | | $662.34 | $0.00 | $662.38 |
| Post-Petition | 12/05/22 | $662.34 | 12/1/2022 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.05 |
| Post-Petition | 12/19/22 | $662.34 | | | | | | | $662.34 | $0.00 | $662.39 |
| Post-Petition | 01/03/23 | $662.34 | 1/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.06 |
| Post-Petition | 01/17/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.40 |
| Post-Petition | 01/30/23 | $662.34 | 2/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.07 |
| Post-Petition | 02/13/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.41 |
| Post-Petition | 03/01/23 | $662.34 | 3/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.08 |
| Post-Petition | 03/16/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.42 |
| Post-Petition | 03/27/23 | $662.34 | 4/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.09 |
| Post-Petition | 04/10/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.43 |
| Post-Petition | 05/09/23 | $1,324.68 | 5/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $0.01 | $0.01 | $0.00 | $662.44 |
| Post-Petition | 06/20/23 | $1,324.68 | 6/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $0.01 | $0.01 | $0.00 | $662.45 |
| Post-Petition | 07/03/23 | $662.34 | 7/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.12 |
| Post-Petition | 07/17/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.46 |
| Post-Petition | 08/14/23 | $1,324.68 | 8/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $0.01 | $0.01 | $0.00 | $662.47 |
| Post-Petition | 08/28/23 | $662.34 | 9/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$662.33 | $0.00 | $662.33 | $0.14 |
| Post-Petition | 09/11/23 | $662.34 | | | | | | | $662.34 | $0.00 | $662.48 |
| Post-Petition | 10/20/23 | $692.34 | 10/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | -$632.33 | $0.00 | $632.33 | $30.15 |
| Post-Petition | 11/17/23 | $1,324.68 | 11/1/2023 | $1,324.67 | $1,324.67 | $927.23 | $397.44 | $0.01 | $0.01 | $0.00 | $30.16 |
| Post-Petition | 12/01/23 | $662.34 | | | | | | | $662.34 | $0.00 | $692.50 |
| Post-Petition | 12/18/23 | $662.34 | 12/1/2023 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | -$677.37 | $0.00 | $677.37 | $15.13 |
| Post-Petition | 01/16/24 | $1,339.71 | 1/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | $0.00 | $0.00 | $0.00 | $15.13 |
| Post-Petition | 04/08/24 | $1,379.72 | 2/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | $40.01 | $40.01 | $0.00 | $55.14 |
| Post-Petition | 04/22/24 | $1,379.72 | 3/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | $40.01 | $40.01 | $0.00 | $95.15 |
| Post-Petition | 05/06/24 | $1,339.71 | 4/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | $0.00 | $0.00 | $0.00 | $95.15 |
| Post-Petition Payment Due | | | 5/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | -$1,339.71 | $0.00 | $1,339.71 | -$1,244.56 |
| Post-Petition Payment Due | | | 6/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | -$1,339.71 | $0.00 | $1,339.71 | -$2,584.27 |
| Post-Petition Payment Due | | | 7/1/2024 | $1,339.71 | $1,339.71 | $927.23 | $412.48 | -$1,339.71 | $0.00 | $1,339.71 | -$3,923.98 |